UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ANDREAS AGUIAR, *pro se*,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Petitioner,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:　　**MEMORANDUM AND ORDER**
　　　　　　　-against-　　　　　　　　　　　　　:　　07-CV-3104 (DLI)(LB)
　　　　　　　　　　　　　　　　　　　　　　　　　:
WARDEN CAMERON LINDSAY,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Respondent.　　　　　　　　　　:
-----------------------------------------------------------------x
ALBERTO GUZMAN, *pro se*,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Petitioner,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:　　**MEMORANDUM AND ORDER**
　　　　　　　-against-　　　　　　　　　　　　　:　　07-CV-3140 (DLI)(LB)
　　　　　　　　　　　　　　　　　　　　　　　　　:
WARDEN CAMERON LINDSAY,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Respondent.　　　　　　　　　　:
-----------------------------------------------------------------x
CARLOS LIZ- MARTINEZ, *pro se*,　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Petitioner,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:　　**MEMORANDUM AND ORDER**
　　　　　　　-against-　　　　　　　　　　　　　:　　07-CV-3141 (DLI)(LB)
　　　　　　　　　　　　　　　　　　　　　　　　　:
WARDEN CAMERON LINDSAY,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Respondent.　　　　　　　　　　:
-----------------------------------------------------------------x
ANDREAS AGUIAR, *pro se*,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Petitioner,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:　　**MEMORANDUM AND ORDER**
　　　　　　　-against-　　　　　　　　　　　　　:　　08-CV-03311 (DLI)(LB)
　　　　　　　　　　　　　　　　　　　　　　　　　:
DISCIPLINARY HEARING OFFICER　　　　　　　　　:
GARCIA and FEDERAL BUREAU OF　　　　　　　　　:
PRISONS　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Respondents.　　　　　　　　　 :
-----------------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

**I. Introduction**

*Pro se*[1] petitioners Andreas Aguiar, Carlos Liz-Martinez, and Alberto Guzman separately filed nearly identical petitions on July 16, 2007 for writs of mandamus ("July 16, 2007 petitions") seeking to compel respondent Warden Cameron Lindsay to ensure that inmates are able to file administrative remedy requests without fear of retaliation and to investigate Correctional Counselor Louis Williams for obstruction of justice. (*See Aguiar v. Lindsay*, 07-cv-3104, Docket Entry 1; *Guzman v. Lindsay*, 07-cv-3140, Docket Entry 1; *Liz-Martinez v. Lindsay*, 07-cv-3141, Docket Entry 1.)[2] Additionally, on January 4, 2008, Aguiar submitted a letter, which the court deemed to be an amendment to his complaint ("January 4, 2008 complaint"), alleging a new incident of retaliation and intimidation separate from the one alleged in his original petition. (*See Aguiar v. Lindsay*, 07-cv-3104, Docket Entry 15.)

On August 18, 2008, petitioner Aguiar filed a separate petition for a writ of mandamus regarding a distinct set of facts ("August 18, 2008 petition") seeking to challenge disciplinary proceedings overseen by Disciplinary Hearing Officer ("DHO") Daniel Garcia, and to compel the prison to expunge the related incident report.[3] (*See Aguiar v. Garcia*, 08-cv-3311, Docket Entry 1). In response, respondents filed a motion to dismiss or, in the alternative, for summary

---

[1] The court holds *pro se* pleadings to "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (citation omitted). The court interprets the petitions "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted).

[2] This Memorandum and Order focuses on Aguiar's claims. Liz-Martinez's and Guzman's claims are the same those in Aguiar's July 16, 2007 petition, and Liz-Martinez and Guzman raise no additional arguments that are not raised by Aguiar. The reasoning in this Memorandum and Order therefore applies with equal force to the petitions of Liz-Martinez and Guzman.

[3] Aguiar also previously filed a petition for writ of mandamus seeking to compel prison officials to provide him administrative remedy forms and to respond to his requests for remedy. This petition was denied. *See Aguiar v. Laird*, 07-cv-1081, Docket Entry 19.

judgment.[4] Thereafter, Aguiar submitted several letters requesting a stay of the proceedings pending discovery. (*See Aguiar v. Garcia*, 08-cv-3311, Docket Entries 21, 26-28.)

For the reasons stated below, the petitions are denied and Aguiar's motion for a stay of the proceedings pending discovery is also denied. Moreover, the court has no jurisdiction to decide Aguiar's January 4, 2008 complaint because Aguiar has not properly exhausted his administrative remedies. Accordingly, that complaint is also dismissed without prejudice.

## II. Background

Aguiar has been serving a life sentence at the Metropolitan Detention Center in Brooklyn, New York (MDC) since November 29, 2006 for a number of offenses, including conspiracy to import and importation of heroin, possession with intent to distribute more than one kilogram of heroin, and the use of intimidation to prevent testimony by an individual in an official proceeding. (*Aguiar v. Lindsay*, Docket Entry 5 "Johnson Decl.," ¶ 6.) Carlos Liz-Martinez and Alberto Guzman are also inmates at the MDC. (*Aguiar v. Lindsay*, Docket Entry 5 "Williams Decl.," ¶ 3.)

### A. July 16, 2007 Petitions

On July 16, 2007, petitioners filed petitions for writs of mandamus arising from an incident that occurred on July 10, 2007. On that day, petitioners gathered outside of Williams' office to submit informal resolution forms complaining of a broken hot-water dispenser and a

---

[4] Respondents have couched their response to the August 18, 2008 petition as a motion to dismiss or, in the alternative, for summary judgment, which was unnecessary in light of the fact that all that was required was to respond to the merits of the petition. *See, e.g.*, *California Public Employees' Retirement System v. WorldCom, Inc.*, 368 F.3d 86, 94 (2d Cir. 2004) (mandamus supported and opposed via briefs); *United States v. Granello*, 365 F.2d 990, 995 n.5 (2d Cir. 1966) (mandamus opposed via affidavit); *Strong v. Lapin*, 2010 WL 276206, at *1 (E.D.N.Y. Jan. 15, 2010) (mandamus opposed via memorandum of law). The court therefore does not need to address whether the petition meets the standards under a motion to dismiss or a motion for summary judgment.

shortage of typewriters for inmate use. (*Aguiar v. Lindsay*, 07-cv-3104, Docket Entry 1, at 2.) Petitioners allege Williams stated to Guzman that he would place Guzman and the other complaining inmates in the Special Housing Unit ("SHU"), if they continued to submit such complaints. (*Id*.) Petitioners claim that, as a result of Williams' threat, they are now "afraid to continue any form of administrative remedies at the prison." (*Id*.) According to petitioners, this conduct constitutes obstruction of justice.

Williams offers a different portrayal of the incident. According to him, "[b]ased on the number of inmates assembled . . . [he] perceived that the situation qualified as or would soon escalate into a group demonstration." (Williams Decl. ¶ 5.) He therefore issued a warning that a group demonstration could result in placement in the SHU. Williams' warnings to the inmates did not result in any disciplinary action. Furthermore, all of the inmates gathered on that day were able to submit their complaints. (*Id.* ¶¶ 5-6 & Ex. 1-2, 5-6; *Aguiar v. Lindsay*, 07-cv-3104, Docket Entry 12, at 8.)

In his January 4, 2008 complaint, Aguiar alleges several additional instances of intimidation stemming from the July 10, 2007 incident. Aguiar claims that several additional MDC staff members interfered with his access to the courts by confiscating legal documents and limiting his access to the law library, and that one of the staff members failed to dismiss a "bogus" charge and refused to release the legal documents that were confiscated. (*See* Aguiar v. Lindsay, 07-cv-3104, Docket Entry 15.)

**A. August 18, 2008 Petition**

On August 18, 2008, Aguiar filed another petition for a writ of mandamus arising from an incident that occurred on February 13, 2007. On that date, an MDC officer searched Aguiar's cell, where he was housed with his cell-mate, and found a sharpened piece of metal, colloquially

known as a "shank," beneath the mattress of the bottom bunk. (*Aguiar v. Garcia*, 08-cv-3311, Docket Entry 1, at 2.) Incident reports were provided to Aguiar and his cell-mate. (*Id.* at 4.) At a hearing before the Unit Disciplinary Committee, Aguiar and his cell-mate stated that the shank was planted in the cell. (*Id.*) Also at that hearing, Aguiar selected a staff representative to assist with his disciplinary proceedings. However, prior to the hearings before respondent DHO Garcia, Aguiar signed a document that indicated that he waived his right to the staff representative. (*See Aguiar v. Garcia*, 08-cv-3311, Docket Entry 19, Ex. F.) At the hearing before DHO Garcia, Aguiar again waived his right to a staff representative. (*Id.*, Ex. H.) The only evidence Aguiar presented at the hearing was his own statement that the shank must have been planted and that his cell-mate was going to take responsibility for it. (*See id.*)

DHO Garcia held that some facts supported petitioner's culpability and Aguiar was therefore sanctioned. (*See id.*) Immediately subsequent to Aguiar's hearing, DHO Garcia held Aguiar's cell-mate's hearing. (*Aguiar v. Garcia*, 08-cv-3311, Docket Entry 17, ¶ 91.) Aguiar's cell mate took responsibility for the weapon, stating that he did so because he did not want any problems with Aguiar. (*Aguiar v. Garcia*, 08-cv-3311, Docket Entry 17, ¶ 95.)

Aguiar alleges that: (1) he was deprived of the opportunity to have a staff representative research his claim that the shank was planted, (2) respondent DHO Garcia altered what was said by Aguiar at the disciplinary hearing, (3) the incident report and DHO Report altered information by failing to state that a confidential informant had planted the shank, (4) DHO Garcia refused to accept a statement by Aguiar's cell-mate who allegedly had accepted responsibility for possession of the shank, and (5) DHO Garcia knew that Aguiar previously had committed the infraction of possessing a shank and, thus, was biased. (*See Aguiar v. Garcia*, 08-cv-3311, Docket Entry 1, at 4, 7-11).

Respondents submitted the Declaration of DHO Garcia as part of their motion to dismiss or, in the alternative, for summary judgment. In response, Aguiar submitted a motion to stay the proceedings pending discovery on the basis that DHO Garcia's declaration contained numerous inconsistencies and, thus, constituted perjury.

## III. Discussion

### A. Writs of Mandamus

Pursuant to 28 U.S.C. § 1361, "[t]he district court shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the petitioner." 28 U.S.C. § 1361. The Second Circuit has established three requirements for issuing a writ of mandamus: "(1) a clear right in the [petitioner] to the relief sought; (2) a plainly defined and peremptory duty on the part of the [respondent] to do the act in question; and (3) lack of another available, adequate remedy." *Billiteri v. United States Bd. of Parole*, 541 F.2d 938, 946 (2d Cir. 1976) (citations omitted). It is well settled that mandamus is a drastic remedy to be used only in extraordinary circumstances. *See Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980); *In re W.R. Huff Asset Mgmt. Co.*, 409 F.3d 555, 562 (2d Cir. 2005). Although a writ of mandamus is usually unavailable to compel an official to perform a discretionary duty, an official who "transgress[es] [the] limits [of that discretion] . . . may be controlled by . . . mandamus to keep within them." *Work v. United States ex rel. Rives*, 267 U.S. 175, 177 (1925). Finally, when a plaintiff lacks a legally cognizable interest in the outcome of an action, the case is moot and the court lacks subject-matter jurisdiction. *Fox v. Bd. of Trustees of the State Univ. of New York*, 42 F.3d 135, 141 (2d Cir. 1994).

B. **July 16, 2007 Petitions**

Petitioners' original motions for writs of mandamus fail to show that respondent was obligated to perform a plainly-defined and nondiscretionary duty. The petitions also fail to show the lack of another available, adequate remedy. Moreover, Aguiar's January 4, 2008 complaint fails to demonstrate that he had exhausted his administrative remedies, a prerequisite to filing suit in federal court.

1. **Failure to Show Plainly-Defined and Peremptory Duty**

Petitioners have not shown that respondent Lindsay failed to perform a plainly-defined and nondiscretionary duty. In *Anderson v. Bowen*, the Second Circuit held that a plainly-defined and peremptory duty did not lie where the warden retained discretion to provide the relief sought. *See* 881 F.2d 1, 5 (2d Cir. 1989). In *New York v. Heckler*, the court similarly held that a writ will not issue unless defendant is under "a clear nondiscretionary duty to perform the act requested." 742 F.2d 729, 739 (2d Cir. 1984).

The conduct at issue here – Williams' decision to issue a warning about placement in the SHU – does not relate to any plainly-defined and nondiscretionary duty of the prison staff. The Supreme Court has recognized that such decisions require prison officials to use their discretion. *Bell v. Wolfish*, 441 U.S. 520, 557 (1979). The Court explained that courts must afford "wide-ranging" deference to detention officials "in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Williams' decision to issue a warning to the gathered inmates falls squarely within such discretion. *See id*. He had to make a real-time assessment of whether a gathering of complaining prisoners could quickly escalate into a group demonstration, or worse, and then decide what steps he should take to prevent it. (Williams Decl. at ¶¶ 4-5.) "Such

7

considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment." *See Bell*, 441 U.S. at 548.

Petitioners argue that William's decision to issue a warning was an unwarranted, "exaggerated response" because none of the inmates had engaged in any unruly conduct. This argument is unavailing. Even if Williams had misread the situation, he did not actually place any inmate in the SHU, and the petitioners continued to submit their complaints. An unfulfilled threat does not rise to the level of an exaggerated response that would compel this court to second guess the real-time security assessments of a prison official working in an often-volatile environment. Such circumstances also do not constitute the extraordinary circumstances necessary to merit mandamus relief.

In what appears to be an attempt to bolster an obviously meritless claim, petitioners also allege that respondents submitted perjured and misleading documents. For example, petitioners contend that Williams falsely stated in his affidavit that he received informal remedy requests from Aguiar on July 23, 2007, whereas the request form states that he received the document on July 11. (*Aguiar v. Lindsay*, 07-cv-3104, Docket Entry 12, at 11-12, 25-27.) Although the date reflected on the documentation is July 11, the remaining documents leave the circumstances regarding the receipt of the documents ambiguous. Regardless, this does not rise to the level of perjury. Petitioners also allege that Williams backdated his responses to the informal remedy requests. (*Id.* at 28.) The only evidence of possible backdating is that the date on which Williams provided the responses to petitioners was a few days later than the date noted on the signature block. (*Aguiar v. Lindsay*, 07-cv-3104, Docket Entry 12, at 28.) Upon careful review

of the pleadings and declarations submitted by the parties, and because the petitioners' remaining allegations of perjury are equally unconvincing, petitioners have failed to presented sufficient evidence to cast doubt on the truthfulness of the respondent's submissions.

Notably, the specific dates are irrelevant to the merits of the petitions. The only question at issue is whether petitioners were deterred from filing administrative remedy requests, and the documents demonstrate – regardless of which dates are accurate – that petitioners continued to submit their remedy request forms and receive responses to their requests after the July 10, 2007 incident.

In sum, petitioners have failed to provide substantial evidence that merely warning the inmates of placement in the SHU was an exaggerated response under the circumstances in question. Accordingly, the petitions must be denied for failure to show a plainly defined and peremptory duty on the part of respondent to have refrained from issuing a warning.

2. **Failure to Show Lack of Another Available, Adequate Remedy**

The petitions for a writ of mandamus also fail under the third prong of the test in *Billiteri*, which authorizes a writ of mandamus only when there is a lack of another available, adequate remedy. 541 F.2d at 946. In this instance, there are administrative remedies available to address the matters petitioners complain of. Significantly, an inmate must exhaust his administrative remedies before he can file a federal cause of action. *See Woodford v. Ngo*, 126 S. Ct. 2378, 2383 (2006) (emphasizing that, under the Prison Litigation Reform Act, "exhaustion is no longer left to the discretion of the district court, but is mandatory"). Assuming *arguendo* that Williams' threat to place petitioners in the SHU has rendered them too afraid to seek informal resolution of their complaints, petitioners could have sought a waiver of informal resolution directly from the Warden or Administrative Remedy Coordinator pursuant to 28 C.F.R. § 542.13(b). Waiver of

informal resolution would have allowed petitioners to by-pass Williams in submitting a complaint, thus assuaging their alleged fear that Williams would place them in the SHU.

Petitioners, however, did not seek a waiver of informal resolution under 28 C.F.R. § 542.13(b) with respect to any complaint in their underlying petitions, including their fear of pursuing administrative remedies. Petitioners do not contend that the waiver of an informal resolution is an inadequate remedy. Accordingly, the petitions are also denied for failure to exhaust administrative recourse and failure to show a lack of another available, adequate remedy.

3. **Aguiar's Subsequent Complaint of Retaliation**

Petitioner Aguiar's January 4, 2008 complaint involving a new incident of retaliation/intimidation by MDC staff members is dismissed for failure to exhaust the administrative remedy process. The BOP has clearly established administrative procedures that inmates must follow when challenging the conditions of their confinement. *See* 28 C.F.R. §§ 542.10-542.19. Before an inmate can file a federal cause of action, he must have exhausted his administrative remedies. *See Woodford*, 126 S. Ct. at 2383. Petitioner Aguiar has neither stated nor demonstrated that he has initiated, let alone exhausted, his administrative remedies, and the court is unwilling to permit him to bypass the Administrative Remedy Program with regard to his subsequent complaint.

C. **August 18, 2008 Petition**

Aguiar's August 2008 motion for a writ of mandamus similarly fails to show that there was a plainly-defined and nondiscretionary duty that respondent was obligated to perform. Furthermore, Aguiar's motion for a stay pending discovery is also denied because Aguiar has failed to show how the discovery he seeks would reasonably be expected to create a genuine issue of material fact.

10

1. **Failure to Show Plainly-Defined and Peremptory Duty**

As noted above, a writ will not issue unless defendant is under "a clear nondiscretionary duty to perform the act requested." *New York v. Heckler*, 742 F.2d 729, 739 (2d Cir. 1984). The conduct at issue here – the actions by DHO Garcia relating to Aguiar's disciplinary proceedings – do not relate to any plainly-defined and nondiscretionary duty of the prison staff.

Aguiar's allegation that he was deprived of the opportunity to have a staff member investigate his assertion is without merit. Aguiar initially obtained a staff representative, and as noted on the Notice of Disciplinary Hearing before the DHO and in two places on the DHO Report, Aguiar waived the right to the staff representative. (*See Aguiar v. Garcia*, 08-cv-3311, Docket Entry 19, Exs. F, H.)

Aguiar's allegation that DHO Garcia did not accurately report what was said at the hearing is also without merit. Aguiar contends that the DHO Report did not accurately reflect his arguments that the shank was planted by a confidential informant and that his cell-mate had decided to accept responsibility for the shank. As Aguiar acknowledges, however, the DHO Report reflects both of these arguments. (*See Aguiar v. Garcia*, Docket Entry 1, at 9.) The Report provides that Aguiar stated at the hearing that "[t]he shot [a prisoner colloquialism for 'incident report'] is not written correctly" and that "[s]omeone put that there." (*See Aguiar v. Garcia*, 08-cv-3311, Docket Entry 19, Ex. H.) The DHO Report further provides that Aguiar stated that "[t]he other inmate in the cell said he was going to say it was his. Why can't you do his hearing first." (*Id.*) Although Aguiar asserts that the statements do not reflect "what was actually said," a DHO is not required to record statements verbatim, and the statements adequately represent the substance of Aguiar's arguments. *See* 28 C.F.R. § 541.17.

Also without merit is Aguiar's contention that the incident reports and DHO Report concealed the involvement of a confidential informant and thus undermined his contention that he was set up. There is no basis for the court to believe that such evidence existed or that such information is routinely included in incident reports. (*See Aguiar v. Garcia*, Docket Entry 17, ¶ 26.) Additionally, Aguiar admits that DHO Garcia addressed this argument at the hearing. Aguiar states that he told DHO Garcia that the incident report failed to mention that the search was conducted on the basis of an informant's actions, and when DHO Garcia asked him why anyone would set him up, he replied that he did not know. (*Aguiar v. Garcia*, Docket Entry 1, at 8.) The DHO Report includes Aguiar's statement that someone planted the shank. (*Aguiar v. Garcia*, Docket Entry 19, Ex. H.) Nevertheless, DHO Garcia found that there was no information to support Aguiar's claim of a set-up. (*See id.*) Although Aguiar may disagree with DHO Garcia's assessment of the argument, his disagreement is not a proper basis for the issuance of a writ of mandamus because it is not "a clear nondiscretionary duty to perform the act requested." *Heckler*, 742 F.2d at 739.

There is similarly no merit to Aguiar's argument that DHO Garcia refused to accept and in fact deleted evidence as to a written statement by Aguiar's cell-mate accepting responsibility for the shank. Aguiar argues only that the statement was provided to DHO Garcia by Aguiar's cell-mate at the cell-mate's hearing, and there is no evidence that the written statement was provided by Aguiar during his own hearing. (*See Aguiar v. Garcia*, Docket Entry 1, at 8.) An inmate has the right to put forth evidence, *see* 28 C.F.R. § 541.17(c), and Aguiar does not contest the fact that he chose not to do so. There is, therefore, no basis for finding that DHO Garcia was obligated to make the written statement part of the record of Aguiar's hearing. Nevertheless, DHO Garcia acknowledged Aguiar's argument in the Report, stating Aguiar argued that "[t]he

other inmate in the cell said he was going to say it was his. Why can't you do his hearing first." (*See Aguiar v. Garcia*, 08-cv-3311, Docket Entry 19, Ex. H.) Therefore, the inclusion of the written report was irrelevant and DHO Garcia's assessment of the cell-mate's alleged acceptance of responsibility was a discretionary act.

Finally, Aguiar's argument that DHO Garcia was biased also has no merit. Aguiar does not contest the fact that a DHO is supposed to know an inmate's history. (*See Aguiar v. Garcia*, 08-cv-3311, Docket Entry 17, ¶ 41.) Moreover, Aguiar has presented no evidence to show that DHO Garcia used the disciplinary history as a basis for determining culpability. In fact, DHO Garcia found Aguiar's cell-mate culpable despite the fact that cell-mate did not have any previous history of possessing a shank. (*Id.* ¶ 103.)

In sum, Aguiar has failed to provide any evidence that his disciplinary case was mishandled. Accordingly, the petition must be denied for failure to show a plainly defined and peremptory duty on the part of respondent to refrain from sanctioning Aguiar.

2. **Aguiar's Request for a Stay Pending Discovery**

In response to respondents' opposition, Aguiar submitted a request for a stay of the proceedings pending discovery. (*Aguiar v. Garcia*, 08-cv-3311, Docket Entries 21, 26-28.) A party seeking discovery must demonstrate "how [the discovery being sought is] reasonably expected to raise a genuine issue of material fact." *Roswell Capital Partners LLC v. Alternative Construction Tech.*, 2009 WL 2163605, at *8 (S.D.N.Y. July 20, 2009) (citing *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir.2004)). "[A] court can reject a request for further discovery 'if it deems the request to be based on speculation as to what potentially could be discovered.'" *Id.* (citing *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir.1994)). "'[A] bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is

insufficient to justify a denial of a motion for summary judgment under Rule 56(f).'" *Id.* (citing *Paddington*, 34 F.3d at 1137).

Aguiar has submitted a lengthy affidavit purportedly justifying the discovery he seeks. (*Aguiar v. Garcia*, 08-cv-3311, Docket Entry 27.) However, Aguiar has failed to demonstrate how the discovery he seeks is reasonably expected to raise a genuine issue of material fact. Instead, the issues raised in Aguiar's affidavit are exaggerated explanations of what he perceives to be inconsistencies in DHO Garcia's declaration purportedly designed to mislead the court. The court takes note of the Second Circuit's holding that, because of the "inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, we examine prisoners' claims of retaliation with skepticism and particular care." *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983). Although this court has construed the petitions liberally to raise the strongest arguments that they suggest in deference to petitioners' *pro se* status, *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006), Aguiar's contention that further discovery would present genuine issue of material fact is entirely speculative in nature.

Moreover, Aguiar's allegations of perjury in his affidavit would not preclude summary judgment. The documentary evidence and Aguiar's own petition are sufficient to demonstrate that his claims are meritless. Therefore, Aguiar has failed to show a basis for discovery. *See Christman v. Utica Nat'l Ins. Grp.*, 2009 WL 838128, at *5 (N.D.N.Y. Mar. 27, 2009) ("A district court may deny a discovery request where the additional discovery would not have precluded summary judgment.") (citation omitted); *The Players, Inc. v. City of New York*, 371 F. Supp. 2d 522, 531-32, 534, 548 (S.D.N.Y. 2005) (denying plaintiff's Rule 56(f) application,

reasoning in part that the purported factual disputes were "immaterial to the Court's disposition of this matter").

**IV. Conclusion**

For the reasons set forth above, the motion for a stay pending discovery is denied and the petitions for mandamus are denied and dismissed. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
March 31, 2010

/s/
DORA L. IRIZARRY
United States District Judge